UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, vs. **HERMAN E. SIMMONS, et al.**, Defendants. | 2:22-CV-11916-TGB-KGA <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (ECF. NO. 8)** |

This matter is before the Court on the Government's motion for a temporary restraining order ("TRO") and preliminary injunction against Defendants Herman E. Simmons, Richmond Simmons, and Profile Income Tax Co., d/b/a Simmons Income Tax Co. Because the parties have agreed that Defendants are entitled to the standard enlarged briefing schedule authorized by Eastern District of Michigan Local Rule 7.1(e)(2)(A) for fully responding to the Government's preliminary injunction request, the Court addresses only the Government's TRO request at this juncture. For the reasons detailed below, the Government's motion for a TRO is **GRANTED**.

## I.  BACKGROUND

Defendants are federal tax return preparers who primarily service customers in the Detroit area, and file an average of 2,142 individual

federal income tax returns per year. Government's Motion for TRO, ECF No. 8-1, PageID.110. The Government alleges that Defendants have repeatedly filed fraudulent tax returns on behalf of customers who did not know that Defendants were claiming false exemptions or understating their true tax liability. *Id.* at PageID.109, PageID.114.

Between 2014 and 2017, the IRS assessed due diligence penalties against Defendants ranging from $11,000–$34,860 because Defendants failed to properly substantiate and document their customers' entitlement to certain tax credits. *Id.* at PageID.110–11. The IRS also conducted audits of 131 tax returns prepared by Defendants for the 2016 through 2020 tax years, and found approximately $550,000 in total deficiencies. *Id.* at PageID.112–13. Before filing suit against Defendants, the IRS interviewed 77 customers, and confirmed that Defendants understated the true tax liability of over 90% of customers. *Id.* at PageID.113.

The Government alleges that Defendants "relied on a few favorite schemes to reduce their customers' tax liability and/or increase the refunds they would be paid." *Id.* These tactics including reporting false or inflated itemized Schedule A deductions (for medical and dental expenses, charitable contributions, or "other taxes") and reporting Schedule C business losses from enterprises that did not exist. *Id.* at PageID.113–18. The IRS also found that "Defendants often combined multiple false itemized deductions on a single return, clearing the

standard deduction threshold without any single overstated deduction attracting the attention of the IRS." *Id.* at PageID.114.

In support of its TRO request, the Government cited and attached numerous declarations from Defendants' customers indicating that they had "no idea" where Defendants got the figures for the purported deductions. *Id.* at PageID.114–17. Indeed, some of Defendants' customers explained that they never mentioned the deductions that Defendants claimed on their behalf and did not provide any documentation to support their entitlement to such deductions. *Id.* Similarly, Defendants' customers attested that Defendants fabricated names for businesses that the customers never operated, and did not even ask customers whether they operated a business before claiming Schedule C deductions on their behalf. *Id.* at PageID.118–19.

Citing this evidence in support of injunctive relief, the Government filed its motion for a TRO and preliminary injunction on January 17, 2023. Although the preliminary injunction seeks to bar Defendants from serving as tax preparers until the present case is resolved, the Government requests an immediate TRO to prevent Defendants from offering and providing tax preparation services when the "preparer season" opens on January 23, 2023. *Id.* at PageID.110. Defendants oppose the TRO and claim that they did not engage in any fraudulent conduct, relied only on information provided by their clients, and did not retain any tax return funds for themselves. Defendants' Opposition to TRO,

3

ECF No. 9, PageID.465–66. Defendants also argue that they will be put out of business if they are unable to prepare tax returns, and claim that the requested relief is disproportionate to the Government's needs and interests. *Id.* at PageID.466.

On January 18, 2023, the Court held a status conference to discuss the parties' positions on injunctive relief, including whether Defendants would stipulate to a TRO while briefing and a hearing could be completed on the Government's entitlement to a preliminary injunction. Defendants' counsel stated that Defendants would consider stipulating to a TRO prohibiting Defendants from engaging in specific misconduct, but would not agree to any injunction that wholly barred them from serving as tax preparers. The Government expressed that any limited injunctive relief would be insufficient in view of the nature of the evidence presented. The parties agreed that Defendants are entitled to the standard enlarged briefing schedule authorized by Eastern District of Michigan Local Rule 7.1(e)(2)(A) for fully responding to the Government's preliminary injunction request. But without an agreement on the TRO, the Court indicated that it would issue a ruling to timely address the Government's TRO request.

## II.  LEGAL STANDARD

In general, the purpose of a TRO "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). To assess whether

4

the moving party is entitled to a TRO, "the Court may rely on affidavits and hearsay evidence" that support the allegations entitling a party to the requested relief. *J.P. Morgan Sec., LLC v. Duncan*, No. 22-11732, 2022 WL 3325514, at *2 (E.D. Mich. Aug. 11, 2022).

Federal law authorizes specific forms of injunctive relief that the Government may seek against tax preparers who have engaged in certain misconduct. Under 26 U.S.C. § 7407, the Court can issue injunctions prohibiting specific misconduct by income tax preparers if the Court finds that the preparer has "engaged in any conduct subject to penalty under [26 U.S.C. § 6694 (the tax code provision that prohibits understating clients' tax liabilities)]," and "injunctive relief is appropriate to prevent the recurrence of such conduct." 26 U.S.C. § 7407(b)(1)–(2). But if the Court determines that "an income tax return preparer has continually or repeatedly engaged" in the relevant misconduct, "and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of [the Internal Revenue Code], the court may enjoin such person from acting as an income tax return preparer." *Id.* § 7407(b)(2).

"The traditional requirements for equitable relief need not be satisfied for the issuance of an injunction pursuant to § 7407, because § 7407 expressly authorizes the issuance of an injunction." *United States v. Gray*, No. 07-42, 2007 WL 851873, at *2 (W.D. Mich. Mar. 19, 2007); *see also United States v. Gleason*, 432 F.3d 678, 682 (6th Cir. 2005)

(explaining that because 26 U.S.C. § 7408 "expressly authorizes the issuance of an injunction" related to tax shelters and reportable transactions, "the traditional requirements for equitable relief need not be satisfied"); *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992) (clarifying that where "Congress has expressly authorized the granting of injunctive relief[,] . . . traditional equitable criteria do not govern the issuance of preliminary injunctions" under the relevant statute).

### III. DISCUSSION

The Government contends that the predicate requirement for an injunction under § 7407(b)(1) has been satisfied because Defendants have violated 26 U.S.C. § 6694 by understating their clients' tax liabilities. As noted above, the Government has proffered significant evidence that Defendants violated § 6694(a) by filing tax returns reporting positions that they knew or should have known were without substantial authority, and therefore "unreasonable" under § 6694. Furthermore, the Government has thoroughly supported its contention that Defendants violated § 6694(b) by filing tax returns that understated their clients' tax liabilities either willfully or with reckless disregard of IRS rules and regulations.

Defendants' customers attested that they did not provide Defendants with the figures listed as false deductions, did not know where those figures could have come from, and never even discussed their

entitlement to the claimed deductions with Defendants. Consequently, as the Government summarizes, Defendants appear to have consistently operated with "reckless disregard for ensuring the accuracy of the returns they prepare." ECF No. 8-1, PageID.124. Based on this evidence, the Court finds that the injunctive relief requirement under § 7407(b)(1) has been sufficiently satisfied for issuance of a TRO. *See United States v. Gibson*, No. 08-14700, 2010 WL 1139340, at *3 (E.D. Mich. Mar. 24, 2010) (finding that a tax preparer violated § 6694 by preparing "false Schedule C losses, false itemized deductions, and false Schedule A deductions" to understate his customers' liabilities with "no realistic possibility of being sustained on the merits").

Because the Government has made a sufficient showing that an enumerated provision of § 7407(b)(1) has been violated, and in view of the fact that Defendants have previously been subject to enforcement penalties placing them on full notice of the consequences of such conduct, the Court finds an injunction appropriate to prevent recurrence of such conduct. But here, pursuant to § 7407(b)(2), the Government is not only seeking an order prohibiting Defendants from engaging in the specific misconduct alleged. Instead, the Government requests a TRO "prohibiting Defendants from preparing any federal income tax returns." ECF No. 8-1, PageID.125.

In support of this request, the Government submits ample evidence that Defendants have "continually or repeatedly" engaged in misconduct,

7

beginning from at least 2014 when the IRS first imposed due diligence penalties on them. The Government has also demonstrated that a conduct-specific injunction is insufficient to prevent further misconduct. Defendants respond that they "have made significant efforts to correct errors in their tax return preparation," although they only began making such changes "[s]ince the inception of this case" in August 2022. ECF No. 9, PageID.464. While Defendants offer some specific examples of recent changes to their prior problematic practices, the Government has pointed to many other issues of which Defendants knew or should have known for years, but still may not have corrected. *See United States v. Pope*, No. 15-11224, 2017 WL 5971665, at *9 (E.D. Mich. Nov. 30, 2017) (issuing broad permanent injunction prohibiting the defendants from acting as tax preparers because the tax code violations "were not isolated; they were pervasive and recurrent, occurring in nearly all of the returns examined by the government" for several years).

Because a narrower TRO limited to Defendants' specific misconduct would be insufficient to preserve the status quo pending resolution on the merits, the Court will issue a TRO prohibiting Defendants from acting as tax preparers under § 7407(b)(2).

## IV. CONCLUSION

For the foregoing reasons, the Government's request for a TRO is **GRANTED**. The Court enters this temporary restraining order enjoining Defendants, individually and doing business as Simmons Tax, their

8

officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with them, directly or indirectly, from:

1. Preparing or assisting in the preparation or filing of federal tax returns, amended returns, and other federal tax documents and forms for anyone other than themselves;
2. Advising, counseling, or instructing anyone about the preparation of a federal tax return;
3. Owning, managing, controlling, working for, or volunteering for an entity that is in the business of preparing federal tax returns or other federal tax documents or forms for other persons;
4. Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax returns or other federal tax documents or forms for others or representing persons before the IRS;
5. Advertising tax return preparation services through any medium, including print, online, and social media;
6. Maintaining, assigning, transferring, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);
7. Representing any person in connection with any matter before the IRS;

8. Employing any person to work as a federal tax return preparer other than to prepare or file the federal tax return of one of the Defendants;

9. Referring any person to a tax preparation firm or a tax return preparer, or otherwise suggesting that a person use any particular tax preparation firm or tax return preparer;

10. Selling, providing access, or otherwise transferring to any person some or all of the proprietary assets of the Defendants generated by their tax return preparation activities, including but not limited to customer lists; and

11. Engaging in any conduct subject to penalty under 26 U.S.C. §§ 6694, and 6695, or that substantially interferes with the administration and enforcement of the internal revenue laws.

This Order will expire at 12:00 p.m. ET on February 3, 2023, unless further extended by order of the Court.

**IT IS SO ORDERED.**

Dated: January 20, 2023    s/Terrence G. Berg
　　　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE