UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:22-CV-11916-TGB-KGA** |
| Plaintiff, | HON. TERRENCE G. BERG |
| vs. | |
| **HERMAN E. SIMMONS, RICHMOND SIMMONS, and PROFILE INCOME TAX CO.,** | **ORDER GRANTING PLAINTIFF UNITED STATES OF AMERICA'S REQUEST FOR SANCTIONS UPON FINDING OF CONTEMPT (ECF NO. 57)** |
| Defendants. | |

On January 13, 2025, the Court held a hearing on Plaintiff United States of America's motion for an order to show cause why Defendant Richmond Simmons should not be held in contempt for failing to comply with the Stipulated Order and Judgment of Permanent Injunction entered on July 17, 2023 at ECF No. 43. Following oral argument, the Court entered a Bench Order granting the United States' motion and finding Defendant Richmond Simmons in contempt for failing to comply with the Permanent Injunction and Judgment. 1/13/2025 Text Only Order Bench Order. The Court further ordered Mr. Simmons to respond and produce records requested by the United States and directed the United States to supplement its request for sanctions. *Id.*

Now before the Court is the United States' Supplemental Request for Entry of Order Imposing Sanctions. ECF No. 57. Defendant Richmond Simmons has not responded or otherwise opposed this request. The Court

concludes further oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion without oral argument. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court **GRANTS** the Government's request for sanctions.

## I.    BACKGROUND

### A. Factual and Procedural Background

Until the Court's injunction ordered them to cease operations, Defendants Richmond Simmons ("Mr. Simmons"), Herman E. Simmons ("Herman Simmons"), and Profile Income Tax Co. were federal tax return preparers who primarily serviced customers in the Detroit area and filed an average of 2,142 individual federal income tax returns per year. The United States brought this action on August 16, 2022, to enjoin Defendants from engaging in the business of preparing federal tax returns. ECF No. 1. The Complaint alleged that since at least 2014, Defendants had prepared false and fraudulent federal tax returns on behalf of customers to reduce customers' tax liabilities and obtain tax refunds to which the customers were not entitled. *Id.* ¶ 9. The Government pled examples of numerous schemes employed by Defendants, including but not limited to: filing Schedules A with false or inflated itemized deductions based on medical and dental expenses, charitable contributions, or payment of unspecified "other taxes;" filing Schedules C with false or inflated business-related expense deductions

2

corresponding to phony businesses; and reporting incorrect filing statuses. *Id.* ¶¶ 14–16.

On January 20, 2023, the Court granted the United States' Motion for a Temporary Restraining Order ("TRO"), enjoining Defendants from:

1. Preparing or assisting in the preparation or filing of federal tax returns, amended returns, and other federal tax documents and forms for anyone other than themselves;

2. Advising, counseling, or instructing anyone about the preparation of a federal tax return;

3. Owning, managing, controlling, working for, or volunteering for an entity that is in the business of preparing federal tax returns or other federal tax documents or forms for other persons;

4. Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax returns or other federal tax documents or forms for others or representing persons before the IRS;

5. Advertising tax return preparation services through any medium, including print, online, and social media;

6. Maintaining, assigning, transferring, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

7. Representing any person in connection with any matter before the IRS;

8. Employing any person to work as a federal tax return preparer other than to prepare or file the federal tax return of one of the Defendants;

9. Referring any person to a tax preparation firm or a tax return preparer, or otherwise suggesting that a person use any particular tax preparation firm or tax return preparer;

10.   Selling, providing access, or otherwise transferring to any person some or all of the proprietary assets of the Defendants generated by their tax return preparation activities, including but not limited to customer lists; and

11.   Engaging in any conduct subject to penalty under 26 U.S.C. §§ 6694, and 6695, or that substantially interferes with the administration and enforcement of the internal revenue laws.

ECF No. 11. That TRO was originally set to expire on February 3, 2023, *id.*, but was extended "until such time as the Court rules on the Government's motion for preliminary injunction." ECF No. 14.

The Court held an evidentiary hearing by videoconference on the Government's motion for preliminary injunction on March 3, 2023, after which the parties submitted supplemental briefing. ECF Nos. 23, 24.

On April 10, 2023, the Court granted the United States' motion for preliminary injunction, enjoining Defendants in the same eleven categories as set forth in the TRO. ECF No. 28. The Court found that "Defendants willfully engaged in fraudulent conduct to understate their clients' tax liability" and that "the evidence before the Court is sufficient to show that their misconduct has caused considerable harm, was

continuous, and is likely to continue through Defendant Richmond Simmons." *Id.*

The parties submitted a Consent to Permanent Injunction Against Defendants on May 15, 2023, ECF No. 34, and the Court entered a Stipulated Order and Judgment of Permanent Injunction against Defendants on July 17, 2023. ECF No. 43. In addition to permanently barring Defendants from directly or indirectly acting as a tax return preparer or filing tax returns on behalf of others, the Injunction Order also requires the Defendants to: (1) "prominently post a copy of this Injunction (with dimensions of at least 12 by 24 inches) at all physical locations where they conduct any type of business;" (2) "produce to counsel for the United States, within 60 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone number and tax period(s) all persons for whom Defendants prepared federal tax returns, amended tax returns, or claims for refund between January 1, 2021, and the date of the Court's order;" and (3) "contact by email, if an email address is known, or otherwise by U.S. Mail, all persons for whom Defendants prepared federal tax returns, amended tax returns, or claims for refund since January 1, 2021 … and inform them of the permanent injunction entered against Defendants by sending each of them a copy of the order of permanent injunction." *Id.* The Injunction Order also authorized the United States to take post-judgment discovery to monitor and ensure Defendants' compliance. *Id.*

On January 25, 2024, Herman and Richmond Simmons filed a declaration, signed under penalty of perjury, affirming that they received a copy of and complied with the Injunction Order. ECF No. 44.

Within just a few weeks of filing his certification, Richmond Simmons violated the Injunction Order by preparing and filing federal income tax returns for others, including returns that exhibited the same fraudulent practices alleged in the United States' Complaint. Mr. Simmons also interfered with the Government's efforts to monitor his compliance by telling his customers not to speak to the government agents.

The United States then filed a Motion for Richmond Simmons to Show Cause why he should not be held in contempt of the Court's Stipulated Order and Judgment of Permanent Injunction. ECF No. 46. Beginning in February 2024, the United States had engaged investigators to monitor Mr. Simmons' compliance with the Permanent Injunction. Based on that investigation, the Government deposed seven individuals who confirmed that Mr. Simmons had prepared their 2023 returns, and several stated that their returns contained false items similar to those alleged in the Government's Complaint in this case. In those seven returns, Mr. Simmons made at least eight types of fabrications, all of the same kind that led the Government to bring this case, such as including a Schedule C for a fictitious business, a Schedule C listing thousands of dollars of fake car and truck expenses, incorrect

information concerning filing status, as well as false and inflated charitable cash contributions, medical or dental expenses, and education and childcare expenses. ECF No. 46, PageID.1682–84 (citing deposition testimony).

In addition, several customers testified that Mr. Simmons sent them text messages instructing them not to respond to any contacts by the Government's investigator. Four customers stated that they received text messages from Mr. Simmons stating: "Please don't answer any calls from an 815 area code. Call me if you have any questions." *Id.* PageID.1680–81 (citing deposition testimony and noting that the 815 area code refers to the investigator's phone number he used to contact customers as part of the contempt investigation). Mr. Simmons claimed in his June 12, 2024 deposition that the calls came from his father, Herman Simmons, and from "the office cell phone," not him. Simmons Dep. 12, ECF No. 46-1, PageID.1696. The Government responds by pointing out that the Defendants had represented, pre-injunction, that Herman Simmons suffered from dementia, and also that it is unclear why an enjoined tax business needed an office cell phone.

Mr. Simmons confirmed under oath at his deposition that he had knowingly violated the Permanent Injunction by preparing 35 to 40 post-injunction tax returns using Turbo Tax, and charging customers $100 each, even though he knew the Court had prohibited him from doing so. Simmons Dep. 8–10, 14, ECF No. 46-1, PageID.1693–95, 1698. The

Government believes the number of returns prepared by Mr. Simmons was much higher. In addition, none of the customers deposed stated that they had received a copy of the Injunction Order from Mr. Simmons and they did not see the copy of the Injunction Order posted at Mr. Simmons' office, as was required by the Injunction Order. ECF No. 46, PageID.1678–79 (citing deposition testimony, including that they were unaware that Mr. Simmons was not allowed to prepare returns).

On January 13, 2025, the Court held a hearing on the United States' motion to show cause at which counsel for the United States and Mr. Simmons personally appeared. At the hearing, Mr. Simmons admitted that he has continued to file tax returns in direct violation of the Permanent Injunction. 1/13/25 Transcript 6–7, ECF No. 55, PageID.1788–89. The Court therefore found Mr. Simmons in contempt for failing to comply with the Permanent Injunction and Judgment. *Id.* at 10–11, PageID.1792–93. The Court further directed the United States to supplement its request for sanctions after receiving certain additional information from Mr. Simmons that was necessary to formulate the requested remedy. *Id.*; 1/13/25 Text-Only Order, Bench Order.

In compliance with that Order, the United States filed the instant Supplemental Request for Entry of Order Imposing Sanctions. ECF No. 57. The United States seeks an order requiring Mr. Simmons (1) to disgorge $4,460 in fees that he received for preparing tax returns in violation of the Injunction Order, and (2) to pay $17,502.09 to the

Government to cover the Government's expenses in investigating Mr. Simmons' noncompliance and bringing the United States' motion for contempt. *Id.* Mr. Simmons did not respond to this motion.

## II.   LEGAL STANDARD

If the court finds a party in contempt, the court may sanction the offending party. *See Williamson v. Recovery Ltd. P'ship*, 467 F. App'x 382, 396 (6th Cir. 2012) (recognizing that the "district court ha[s] broad discretion to fashion an appropriate remedy" for civil contempt). In determining what sanctions are appropriate, courts are guided by the purposes of contempt: "(1) to coerce the defendant into compliance with the court's order; and (2) to compensate the movant for losses sustained." *Dominic's Rest. of Dayton, Inc. v. Mantia*, No. 3:09-CV-131, 2009 WL 10679457, at *4 (S.D. Ohio May 14, 2009) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 448–49 (1911)); *see also TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983) ("[Civil contempt's] primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance."). When determining whether to impose sanctions, the court must "use the 'least possible power adequate to the end proposed.'" *Mantia*, 2009 WL 10679457, at *4 (quoting *Spallone v. United States*, 493 U.S. 265, 276 (1990)).

Courts frequently use their broad powers to prevent wrongdoers from enjoying the fruits of their misconduct. *See United States v. Stinson*, 239 F. Supp. 3d 1299, 1326 (M.D. Fla. 2017), *aff'd*, 729 F. App'x 891 (11th

Cir. 2018); *see also F.T.C. v. Leshin*, 618 F.3d 1221, 1237 (11th Cir. 2010) (stating that disgorgement is appropriate because the wrongdoer should not be allowed to profit from his violations of an injunction order); *United States v. Ireland*, No. 2:11-cv-14068, 2019 WL 3759533, at *2 (E.D. Mich. July 24, 2019) (Friedman, J.). A court may also compensate a moving party for the nonmovant's contempt in the form of a fine payable to the movant. *Id.* This fine "must of course be based upon evidence of complainant's actual loss," and the complainant's "right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). A court may also require the contemptuous party to pay the complainant's attorney's fees and costs for bringing the motion. *TWM Mfg.*, 722 F.2d at 1273.

## III.   DISCUSSION

### A. Disgorgement of Fees

The United States reports that Mr. Simmons provided to the Government a customer list with the names of 45 customers and CashApp payment records showing the fees he received for preparing tax returns in violation of the Injunction Order during February, March, and April 2024. Of the 45 customer names provided, 37 of those appear by name in Mr. Simmons' CashApp records, with most paying $100, and others paying $240, to Mr. Simmons for tax services in February, March, or April 2024, for a total of $4,460. The United States therefore requests

10

that the Court order Mr. Simmons to disgorge $4,460 in those ill-gotten fees.

"To be entitled to disgorgement, the Government need only produce a reasonable approximation of the defendant's ill-gotten gains." *Stinson*, 729 F. App'x at 899. "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer." *Id.* (punctuation modified). Once the Government presents its estimate, as it has here, the burden shifts to Mr. Simmons to show that the Government's estimate was not a reasonable approximation. *See United States v. Mesadieu*, 180 F. Supp. 3d 1113, 1120 (M.D. Fla. 2016). Mr. Simmons has not responded and thus has not rebutted the Government's proof. Moreover, the amount in question was calculated using records provided by Mr. Simmons. The Court finds that the United States has presented a reasonable determination of Mr. Simmons' ill-gotten gains and that disgorgement of those fees is appropriate in this case. Mr. Simmons blatantly and intentionally violated of the Court's Permanent Injunction Order. From such contemptuous conduct he must not be allowed to profit. *See United States v. Powell*, No. 21-CV-10622, 2024 WL 1342678, at *15 (E.D. Mich. Mar. 29, 2024) (Goldsmith, J.) (ordering disgorgement of "all profits received from fraudulently prepared returns"); *United States v. Carter*, No. 2:13-cv-10742, 2022 WL 22851963, at *2 (E.D. Mich. Apr. 12, 2022) (Davis, J.) (ordering tax preparers to disgorge fees associated with preparation of

tax returns in violation of permanent injunction); *Ireland*, 2019 WL 3759533, at *2 (finding "[d]isgorgement is also appropriate because [the defendant] should not be allowed to profit from her violations of the Order."); *United States v. Edmond*, No. 2:13-CV-02938, 2016 WL 1312155, at *5 (W.D. Tenn. Apr. 4, 2016) (finding tax return preparer in civil contempt for violating an injunction and awarding disgorgement of all fees collected for the preparation of returns as a civil contempt remedy). As a sanction, the Court finds that requiring disgorgement is the 'least possible power adequate to the end proposed.'" *Mantia*, 2009 WL 10679457, at *4 (quoting *Spallone*, 493 U.S. at 276).

### B. Costs and Expenses

The United States asserts that it has incurred at least $17,502.09 in costs expenses in investigating Mr. Simmons' noncompliance with the Permanent Injunction, bringing his violations to the Court's attention, and stopping Mr. Simmons' contemptuous conduct. The Government states that, beginning in February 2024, it engaged investigators with the firm Madison Associates, Inc. to monitor Mr. Simmons' compliance with the Injunction, which included reviewing tax return information compiled by the IRS and contacting a number of Mr. Simmons' former customers to ask them whether Mr. Simmons prepared their 2023 tax returns in January or February 2024. The total cost of this investigation was $10,853.82. *See* Decl. of Richard Raven, ECF No. 57-1.

12

Based on that investigation's findings, the United States deposed seven customers in Detroit, Michigan who confirmed that, in 2024, Mr. Simmons had prepared their 2023 tax returns. The United States spent $935 for process servers to serve the deposition subpoenas and prepare affidavits of service, $2,888.35 for court reporting services for eight depositions, and $1,037.51 in travel costs for the United States' counsel to travel to and conduct the depositions. *See* Decl. of Claire A. Shimberg, ECF No. 57-2. The United States' counsel further incurred travel costs to attend the January 13, 2025 contempt hearing, totaling $1,787.41. *See* Shimberg Decl., ECF No. 57-2. The United States therefore seeks costs totaling $17,502.09 for investigating and litigating its contempt case against Mr. Simmons.

Courts have noted that "[c]ompensation of the injured party in a contempt proceeding 'often consist[s] of reasonable costs (including attorneys' fees) incurred in bringing the civil contempt proceeding." *American Consol. Indus., Inc. v. Blasingim*, Nos. 1:19-cv-137, 5:17-cv-2253, 2022 WL 17687491, at * 27 (N.D. Ohio Dec. 15, 2022) (quoting *Unitronics (1989) (R"G) Ltd. v. Gharb*, 85 F. Supp. 3d 133, 142 (D.D.C. 2015)). "The remedial purposes of contempt suggest that a court may award reasonable attorneys' fees and costs as part of the losses the injured party sustains as a result of the violation of the court order." *Id.; Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 86 (D.D.C. 2003); *see also United Mine Workers of Am.*, 330 U.S. at 303–04 (the purpose of

13

civil contempt is "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained"); *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991) (recognizing compensatory damages "payable to the complainant as compensation for damages caused by the contemnor's noncompliance").

The Court finds that the United States has satisfactorily demonstrated that it reasonably incurred the costs its seeks in successfully investigating and prosecuting this civil contempt proceeding. *See United States v. Choice*, No. 4:10-cv-14612, 2022 WL 4285724, at *2 (E.D. Mich. Aug. 2, 2022) (Goldsmith, J.) (awarding costs and attorney fees associated with investigating and filing the motion for civil contempt); *Allegra Network LLC v. Bagnall*, No. 11-11131, 2012 WL 1902839, at *2 (E.D. Mich. May 25, 2012) (Cleland, J.) (awarding costs in a civil contempt proceeding for private investigator fees, expenses incurred in serving subpoenas, and other documented administrative costs). Accordingly, the Court will award the United States the costs and expenses it seeks.

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that sanctions shall be levied **AGAINST** Richmond Simmons and in favor of the United States, payable to the United States in the amount of **$21,962.09**, which represent disgorgement of $4,460 in fees that Mr. Simmons received for preparing tax returns in violation of the Injunction

14

Order and $17,502.09 in the Government's costs and expenses spent investigating Mr. Simmons' noncompliance and bringing the United States' motion for contempt.

**IT IS SO ORDERED.**

Dated: March 11, 2025          /s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE